JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: THOMAS D'ARCO | Case No. 17-CV-05629-AB |
| | Adv. No. 15-AP-01076-MT |
| | Bk. No. 15-BK-10446-MT |
| THOMAS MISIK, | **ORDER <u>AFFIRMING</u> BANKRUPCY COURT'S ORDER AND JUDGMENT** |
| Appellant, | |
| v. | |
| THOMAS D'ARCO, | |
| Appellee. | |

Before the Court is Plaintiff Thomas Misik's ("Misik") appeal of the Bankruptcy Court's order judgment in favor of Defendant Thomas D'Arco ("D'Arco") on Misik's claims under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6) seeking to deny D'Arco a discharge of his debt to Misik.

1.

## I. BACKGROUND

This case arises out of Plaintiff Misik's attempts to recover $150,000 that he lent to Martin Ballardo ("Ballardo"), the Sayrahan Group LLC ("Sayrahan"), and Defendant D'Arco in May and June 2007 to develop and sell two properties in Apple Valley CA. Before providing the funds, Misik dealt solely with Ballardo, whom Misik testified he had known from prior dealings. Misik provided the funds in May and June 2007 by two cashier's checks, both made out to D'Arco, as per Ballardo's instructions. In exchange, Ballardo gave Misik post-dated checks drawn on the Sayrahan bank account; promissory notes between Sayrahan payor and Misik payee at 12% interest; and copies of recoded deeds of trust in favor of Misik, establishing the two properties as security. In early 2008, one of Sayrahan's periodic checks to repay Misik did not clear the bank, and Misik did not receive any checks thereafter.

In June 2008, Misik sued Ballardo, Sayrahan, and D'Arco in state court for breach of contract and fraud. After trial, judgment was entered for Misik against Ballardo for fraud and against Sayrahan for breach of contract. Judgment was also entered in favor of D'Arco personally, and Misik's claims against D'Arco were dismissed. At some point, Ballardo absconded.

Then, a judgment debtor exam of Sayrahan, through its owner D'Arco, revealed facts that prompted the state court to find that D'Arco was the alter ago of Sayrahan. The state court enter an amended judgment finding D'Arco and Sayrahan jointly and severally liable for the breach of contract damages. Thereafter, D'Arco filed for bankruptcy.

Misik filed this adversary proceeding to deny D'Arco a discharge of the debt (the $150,000 state court judgment) under 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B); (a)(4); and (a)(6). All four of Misik's claims turn on the same factual allegations. First, that D'Arco obtained the $150,000 loan from Misik by fraud—specifically, under the false pretense that Sayrahan was a solvent LLC that could repay Misik but instead it was a "worthless shell company." To induce him to lend the money, Misik

says Ballardo provided him deeds of trust, promissory notes, and post-dated checks from Sayrahan to cause him to believe that Sayrahan would be able to repay the loan. Misik also says he believed he would be the first lienholder but in fact there was a senior lienholder. In addition, Misik was dealing with Ballardo and Sayrahan and claims that he would not have lent the money had he known that Sayrahan was an alter ego of D'Arco. Misik also says that D'Arco/Sayrahan used the loan money to buy more time on the existing defaults on these properties instead of to develop the properties.

The bankruptcy court conducted a bench trial and considered the following evidence: 26 stipulated facts; testimony by Misik and D'Arco; Misik's Declaration; D'Arco's Declaration; D'Arco's deposition and exhibits thereto; and about 20 exhibits consisting of checks and other documents relating to the loans in issue, filings from the state court action, and Sayrahan's formation document.

The bankruptcy court found that Misik could not carry his burden of proof on any of his claims. The court concluded that Misik dealt only with Ballardo until early 2008 when the first check did not clear and that he did not deal with D'Arco until after. Therefore, D'Arco did not make any misrepresentations that Misik could have relied upon. The bankruptcy court noted that the state court found that D'Arco and Ballardo were not agents of each other and stated that nothing presented at trial changed that. Therefore, D'Arco could not be held liable for any fraud or misrepresentations by Ballardo. The bankruptcy court also stated that in the state court action, D'Arco was specifically adjudged not liable on the fraud claim, meaning he had no fraudulent intent to deceive Misik; the court found that none of the additional evidence before it showed that D'Arco had fraudulent intent. The court also found that even though the trust deeds and promissory notes bore the names of D'Arco and Sayrahan, Misik, who was dealing only with Ballardo, never inquired about D'Arco and Sayrahan before giving Ballardo the loan funds. Similarly, Notices of Default were already recorded on the properties, so D'Arco was not trying to hide the fact that

3.

1  the properties were in default. And, as a reuslt, Misik had notice that D'Arco was
2  involved, that the properties were already in default, and that he was not the first
3  lienholder, so he could not show reliance on the opposite of these facts.

4  **II.    LEGAL STANDARD**

District courts have jurisdiction to hear appeals from, *inter alia*, "final judgments, order, and decrees" of the bankruptcy courts. 28 U.S.C. §158(a)(1); *see also* Fed. R. Bankr. Proc. 8005. "When reviewing a decision of a bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *In re Guadarrama*, 284 B.R. 463, 468 (C.D. Cal. 2002). On appeal, "[t]he bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." *In re Strand*, 375 F.3d 854, 857 (9th Cir.2004). "Mixed questions of law and fact are reviewed *de novo*." *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998).

Whether a debtor had an intent to defraud and whether a creditor relied upon false statements are questions of fact reviewed under a clearly erroneous standard. *In re Candland*, 90 F.3d 1466, 1469 (9th Cir. 1996), *as amended* (Oct. 2, 1996)

In reviewing the bankruptcy court's findings of fact for clear error, "[t]his court must accept the bankruptcy court's findings of fact unless, upon review, the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). "If two views of the evidence are possible, the [bankruptcy] judge's choice between them cannot be clearly erroneous." *In re Marshall*, 721 F.3d 1032, 1039 (9th Cir. 2013), quoting *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 411 (9th Cir. BAP 2005). "'[C]learly erroneous' is a very exacting standard . . . To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *Campion v. Old Republic Home Prot.* Co., No. 09-CV-748-JMA NLS, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011), quoting *Hopwood v. State of Texas*, 236 F.3d 256 (5th Cir. 2000) (internal quotes omitted). As the Seventh Circuit Court of

Appeals colorfully put it, courts "will not reverse a determination for clear error unless it strikes us as wrong with the force of a 5 week old, unrefrigerated, dead fish." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001); *accord In re O'Connell*, 728 F.3d 41, 46 (1st Cir. 2013).

III. **DISCUSSION**

Misik claims that D'Arco's debt (the $150,000 state court judgment) is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B); (a)(4); and (a)(6). Misik must prove his claims by a preponderance of the evidence in order to render D'Arco's debt nondischargeable. *Grogan v. Garner,* 498 U.S. 279, 291 (1991).

Because Misik bears the burden of proof of all of the elements of all of his claims, a failure of proof as to a single element of any claim is dispositive of that claim. Therefore, if the bankruptcy court's findings as to any single element are affirmed, then the judgment as to that claim must be affirmed. The evidence before the bankruptcy court well-supported the factual findings and the conclusions of law. The Court finds no clear error in the factual findings, and no legal error in the resulting conclusions of law. This Court will not specifically address each finding but instead will address only as many as are necessary to affirm the order. The Court begins by identifying Misik's four claims and their elements.

**A. Claims Under Section 523(a)(2)(A) and (a)(2)(B)**

Section 523(a)(2)(A) excepts from discharge a debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To prevail on this claim, Misik had to demonstrate these five elements by a preponderance of the evidence: "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000).

Section 523(a)(2)(B) is similar to §523(a)(2)(A), but it applies to debts obtained by a materially false written statement respecting the debtor's or an insider's financial condition. *See In re Candland*, 90 F.3d at 1469 (stating elements of § 523(a)(2)(B)).

Misik's claims under § 523(a)(2)(A) are that D'Arco misrepresented the nature of Sayrahan and that Misik was not the first lienholder, and thereby secured the loan under false pretenses and by fraud. As to the misrepresentation portion of these claims, both D'Arco and Misik testified that they did not speak with each other before Misik gave the loan money to Ballardo; from this evidence, the bankruptcy court appropriately concluded that D'Arco could not have misrepresented anything to Misik, and, further, that Misik did not rely on anything D'Arco said. The only communication D'Arco made was a fax he sent to Misik, between the first and second loan, saying only that he would not let Misik down, but the bankruptcy court properly found that this was not a representation of fact. As to Misik not being the first lienholder despite believing he was, there was likewise no evidence that D'Arco made any such misrepresentation to Misik. Also, it is undisputed that the senior liens were properly recorded before Misik gave the money to Ballardo, so Misik is presumed to have constructive notice of those senior liens. *See Am. Med. Int'l, Inc. v. Feller*, 59 Cal. App. 3d 1008, 1020 (1976). Here, Misik simply neglected to run a title report. The bankruptcy court did not err in finding that Misik's belief as to the position of his lien cannot establish any misrepresentation on D'Arco's part.

Insofar as Misik claims that he and D'Arco were in a fiduciary relationship so D'Arco had an affirmative duty to disclose such that an omission could be a form of misrepresentation or fraud, the bankruptcy court rejected that argument, finding there was no affirmative duty to disclose. Misik argues that there was a fiduciary relationship because he, Ballardo, Sayrahan, and D'Arco were in a joint venture. In his state court deposition, D'Arco did use the phrase "joint venture" to describe the relationship among Misik, Ballardo, Sayrahan, and himself. However, the bankruptcy court was not bound to accept D'Arco's testimony as conclusive, as it is not at all

clear whether D'Arco was using "joint venture" as the legal term of art or colloquially. To establish a joint venture, a person must prove three elements: " 'the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise . . . .' " *Unruh-Haxton v. Regents of University of California*, 162 Cal.App.4th 343, 370 (2008). Here, Misik points to no testimony establishing the first (joint control) and third (joint ownership) elements, and only indeterminate evidence as to the second (shared profits). The bankruptcy court did not err by rejecting Misik's joint venture argument and his misrepresentation-by-omission theory based thereon.

As to the fraud component of this claim, the bankruptcy court noted that the state court previously held that D'Arco was not liable for fraud in connection with these loans. The court further stated that none of the additional evidence presented at trial showed fraudulent intent. Misik argues that fraudulent intent can be inferred from the fact that Sayrahan was insolvent before and after Misik lent the money, that Sayrahan lacked equity in the properties, and that Sayrahan was in a "hopeless financial situation." Fraudulent intent *may* be inferred from such facts, but these facts do not *necessarily* establish fraudulent intent. And here, other evidence tended to show that D'Arco's intent was not fraudulent. The bankruptcy judge recited this evidence in the order. Most significantly, D'Arco in fact used the money to pay property taxes and the existing defaulted loans—which was one of the understood purposes of the loan. From this fact, the bankruptcy court permissibly inferred that D'Arco did intend to develop and sell the properties, because had he intended to defraud Misik, "he could have just run off with the money instead of servicing the obligations on the Properties." *See* Order 13:20-22 The bankruptcy court also specifically found credible D'Arco's testimony that he intended to develop and sell the Properties, but that the economic recession made this endeavor unsuccessful. Misik faults the court for relying on D'Arco's testimony, but she was entitled to make

7.

the credibility finding she did, and this Court finds no reason to disturb it.

The court also rejected Misik's claim under § 523(a)(2)(B), finding that the only alleged statements of financial condition that Misik points to—the trust deeds, promissory notes, and post-dated checks that Ballardo gave to Misik—were not false representations. Misik argues that these documents gave him the wrong impression that Sayrahan could repay the loan, but this does not establish that anything about these documents was false. The bankruptcy court did not err.

**B. Claim Under Section 523(a)(4)**

Section § 523(a)(4) excepts from discharge a debt obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Each of these varieties of conduct requires some showing of "positive fraud" or intentional wrongdoing. *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013) (construing "defalcation" to have a heightened intent requirement of intentional wrongdoing, just like the other types of conduct listed in the statute).

The court found that Misik did not prove this claim. Misik argues this was error because D'Arco engaged in "fraud or defalcation while acting in a fiduciary capacity." But, as noted above, the bankruptcy court rejected Misik's fiduciary duty argument, and further found that D'Arco lacked fraudulent intent and in fact intended to develop the property. Misik alternatively argues that D'Arco committed embezzlement. But, one element of embezzlement is that there are circumstances indicating fraud, *see In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991), and again, as noted, the bankruptcy court appropriately found that there was no fraud.

**C. Claim Under Section 523(a)(6)**

Section 523(a)(6) excepts from discharge any debt of the debtor "for willful or malicious injury to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). For § 523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself. *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 60 (1998). And, both willfulness and maliciousness must be proven. *Ormsby v. First Am. Title*

8.

*Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). "A 'willful' injury is a 'deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.' " *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) (*quoting Kawaauhau*, 523 U.S. at 61 (emphasis omitted)). An injury was done maliciously if the debtor (1) committed a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) was done without just cause or excuse. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002).

The bankruptcy court concluded that Misik did not sustain his burden of proof on this claim, implicitly finding that Misik could not establish that D'Arco acted with willful intent to injure or maliciously. This is not error in light of the court's well-supported findings that D'Arco did not make any misrepresentations to Misik, did not have fraudulent intent, and in fact intended to develop and sell the properties.

### IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order and Judgment in favor of Thomas D'Arco are **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: May 10, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

CC: BK Court and BAP

9.